UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MELANIE WHITE, et al.**, <br><br> Plaintiffs, <br><br> vs. <br><br> **LEIGH HLAVATY, et al.**, <br><br> Defendants. | 2:22-CV-13005-TGB-EAS <br><br> HON. TERRENCE G. BERG <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** <br> **(ECF NO. 8);** <br><br> **AND GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY** <br> **(ECF NO. 14)** |

On September 21, 2021, 22-year-old Isaiah White, a Black male, died of a shotgun wound to the back of the head. Two days later, the Wayne County Deputy Chief Medical Examiner, Defendant Leigh Hlavaty, wrote a report stating that the cause of death was homicide. The circumstances of White's death described in the police report, however, suggested that his fatal wound was self-inflicted. Relying on that report and crime scene analysis, Hlavaty later amended her report to state that the cause of death was suicide. Now, White's bereaved parents, Plaintiffs Melanie White and Darren Pollard, have sued Defendants Hlavaty and Wayne County under 42 U.S.C. § 1983 claiming that Defendants violated the Fourteenth Amendment by changing White's cause of death from homicide to suicide on the basis of race or without any rational basis. Plaintiffs also allege that Defendants were grossly negligent and

1

negligently inflicted emotional distress upon them by failing to properly investigate White's death.

Defendants have moved to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief can be granted. ECF No. 8. Defendants also moved for leave to file supplemental authority in support of their motion to dismiss. Defendants' motion for leave will be granted because the supplemental authority is relevant and helpful to the Court in resolving this matter. Having carefully reviewed the complaint, supporting exhibits, and briefing, the Court concludes that Defendants' motion to dismiss is well taken and must be **GRANTED**.

## I. BACKGROUND

In the early hours of September 21, 2021, Isaiah White's housemate and cousin, Trey Lapsley, was upstairs playing video games when he heard a gunshot from inside his house and ran downstairs to discover White lying on the couch with a gunshot wound to the back of his head. Lapsley shared the home with his brother Lake Lapsley, his father, and White. Plaintiffs' Exh. 3, ECF No. 1-4, PageID.20. Lapsley indicated to police that only he and White were home at the time shot was fired. *Id.* Lapsley immediately called his brother and the police upon seeing White. *Id.*; ECF No. 1, PageID.3. Shortly after Lapsley called for help, police arrived on the scene to investigate. ECF No. 1-4, PageID.20.

According to the police report, the officers found White lying on the couch in a pool of his own blood with the gun on the ground. *Id.* The gun had blood on the grip and rested on the right side of White's body. *Id.* The officers also observed that White was holding a blunt in his right hand. *Id.* White had no other injuries besides the gunshot wound. *Id.* Medics arrived on the scene and pronounced White dead at 1:10 a.m. *Id.*

Lapsley told the officers that White had suffered from mental illness "for some time" and recently returned home from being hospitalized for depression. *Id.* Lapsley also explained that the gun belonged to his brother, Lake Lapsley, and was stored in a closet where anyone in the house could have accessed it. *Id.* at PageID.20–21. Upon receiving a call from Trey telling him to come home immediately, Lake arrived on the scene a few moments before the officers. *Id.* at PageID.21. Lake similarly explained that White had been "in and out of hospitals for mental illness for [a] long time now." *Id.* Lake and Trey both told police that they had not touched White's body or the weapon before the officers secured the scene. *Id.* at PageID.20–21.

On September 23, 2021, Defendant Leigh Hlavaty, the Wayne County Deputy Chief Medical Examiner, issued a postmortem report on White's death. Plaintiffs' Exh. 2, ECF No. 1-3, PageID.15. Hlavaty's report does not contain or reference any police report, but it states: "Investigation revealed that the decedent could not have shot himself in the back of the head with the shotgun in question and only using his left

3

hand." *Id.* Hlavaty's report concluded: "Thus, the manner of death is homicide." *Id.*

Nearly two months later, on November 10, 2021, Hlavaty wrote an "Addendum" to her initial postmortem report. Hlavaty noted that "[f]urther investigation by police revealed that this wound was self-inflicted." Plaintiffs' Exh. 4, ECF No. 1-5, PageID.22. Hlavaty summarized that White "was suicidal and had voiced suicidal ideations to his family." *Id.* Hlavaty added that Trey Lapsley, who had promptly called the police after the gunshot, "was not felt to have been involved in the shooting." *Id.* Hlavaty also offered a new conclusion that based on blood patterns and White's position on the couch, White could have "used his left hand to pull the trigger of the weapon," despite being right-handed. *Id.* Accordingly, Hlavaty amended the cause of death to suicide. *Id.*

Plaintiff Melanie White, the mother and personal representative of Isaiah White's estate, along with Isaiah White's father, Plaintiff Darren Pollard, have sued Hlavaty and Wayne County based on Hlavaty's decision to classify their son's death as a suicide. Plaintiffs allege that changing White's cause of death to suicide (thereby ending Wayne County's investigation into his potential homicide) constitutes intentional race discrimination or state action lacking rational basis in violation of the Equal Protection clause of the Fourteenth Amendment. ECF No. 1, PageID.4, PageID.6–7. Plaintiffs also claim that Defendants

4

are liable for gross negligence and negligent infliction of emotional distress based on their failure to properly investigate White's death. *Id.* at PageID.8–10.

Defendants have moved to dismiss Plaintiffs' complaint for failure to state claims under Rule 12(b)(6). ECF No. 8. Defendants argue that Plaintiffs have not plausibly alleged the existence of a constitutional violation and have not pled essential elements of gross negligence and negligent infliction of emotional distress. *Id.* at PageID.51–52. The Court heard oral argument on the motion on July 20, 2023.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit or claim where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is generally confined to the pleadings. *Id.* Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual

allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678–79).

### III. DISCUSSION
#### A. Whether Plaintiffs Have Plausibly Pled a Fourteenth Amendment Constitutional Violation

Plaintiffs' § 1983 claim is premised on an alleged violation of the Equal Protection clause of the Fourteenth Amendment. Plaintiffs argue that Defendants intentionally discriminated against Isaiah White on the

basis of race by changing his cause of death from homicide to suicide. Alternatively, Plaintiffs contend that Defendants' decision to amend White's cause of death lacked any rational basis, and thus constituted a Fourteenth Amendment violation based on a "class-of-one" theory.[1]

As explained below, Plaintiffs' § 1983 claim against Defendant Hlavaty in her individual capacity and their *Monell* claim against Defendant Wayne County must be dismissed because Plaintiff has failed to plausibly allege a violation of White's Fourteenth Amendment equal protection rights.

### 1. Whether Plaintiffs Have Sufficiently Alleged Intentional Discrimination

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). But when alleging race-based discrimination in violation of

---

[1] Defendants' motion to dismiss focused solely on addressing Plaintiffs' allegations of intentional discrimination rather than Plaintiffs' class-of-one theory. The Court ordered Defendants to provide supplemental briefing on Plaintiffs' class-of-one theory if they intended to move for complete dismissal of Plaintiffs' Fourteenth Amendment claim. ECF No. 16. Defendants submitted supplemental briefing arguing that Plaintiffs failed to state a claim on a class-of-one theory. ECF No. 18. Plaintiffs responded to Defendants' supplemental briefing, ECF No. 19, and the Court questioned both parties on the class-of-one theory during oral argument held on July 20, 2023.

the Equal Protection clause, a plaintiff must demonstrate that the discrimination was intentional. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). While the plaintiff need not prove that racial animus was the "dominant" or "primary" purpose of the challenged action, she must show that race was a "motivating factor." *Id.* at 265–66. To survive a motion to dismiss, Plaintiffs must plausibly allege that White's race was a motivating factor in Defendants' conduct through direct or circumstantial evidence. *See Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 571 (6th Cir. 2011).

In *Ivery v. Hudson*, Chief Judge Cox recently granted a motion to dismiss based substantively similar allegations. The *Ivery* plaintiffs alleged that "[the defendants'] changing of Decedent's cause of death from 'homicide' to 'suicide' was made due to the ethnicity, race, and economic status of the decedent, constituting a violation of Plaintiffs' Fourteenth Amendment rights under 42 U.S.C. § 1983." No. 22-12440, 2023 WL 3098779, at *2 (E.D. Mich. Apr. 26, 2023) (Cox, C.J.). The *Ivery* court concluded that the plaintiffs' allegations of race discrimination were "conclusory," because the plaintiffs "provide[d] no factual support for their contention that [the defendants'] decision was based on Decedent's race or economic status." *Id.*

In this case too, Plaintiffs do not specify any actions, statements, motives, or evidence of intent supporting a plausible conclusion that Defendants were acting with racial animus. In their complaint, Plaintiffs

8

rely solely upon "information and belief" that Defendants changed White's cause of death because of his race. ECF No. 1, PageID.7. No facts are alleged, however, that meaningfully support this legal conclusion.

Plaintiffs point to the *Ivery* case as evidence of a pattern of discrimination against Black decedents by Michigan county coroners. *See* ECF No. 12, PageID.102–03. But one example of a Wayne County Medical Examiner changing the cause of death of a Black decedent from homicide to suicide—particularly when a court found no plausible claim of discrimination in that case—does not support the conclusion that Defendants here intentionally discriminated against White. Plaintiffs seek to bolster their claim by citing a 2018 *Washington Post* article on statistical disparities in arrests for Black homicide victims compared to white victims. *Id.* at PageID.97–98. But statistics showing racial disparities in *homicide arrests* are not germane to identifying racial disparities in coroner cause-of-death determinations. And even if the *Ivery* case and the arrest statistics did provide some support for Plaintiffs' intentional discrimination theory, "[o]nly in rare cases will a statistical pattern of discriminatory impact conclusively demonstrate a constitutional violation" without further support. *United States v. Avery*, 137 F.3d 343, 356 (6th Cir. 1997).

Here, Plaintiffs' reliance on a similar circumstance that involved different actors and national statistics on homicide arrest rates from five years ago fall far short of plausibly alleging "a clear pattern,

9

unexplainable on grounds other than race," to show intentional discrimination. *Arlington Heights*, 429 U.S. at 266. Indeed, even where "historical patterns of discrimination created the conditions" that led to the misconduct alleged, a plaintiff must still "connect [the defendant's] conduct to a discriminatory purpose" to survive a motion to dismiss. *In re Flint Water Cases*, 384 F. Supp. 3d 802, 849 (E.D. Mich. 2019), *aff'd and remanded*, 960 F.3d 303 (6th Cir. 2020). Therefore, Plaintiffs have failed to adequately plead a Fourteenth Amendment intentional race discrimination claim.

### 2. Whether Plaintiffs Have Sufficiently Alleged State Action Lacking Rational Basis

Plaintiffs contend that even without demonstrating that racial animus motivated Defendants' conduct, they can still proceed under a class-of-one theory of discrimination. Specifically, Plaintiffs allege that "[i]f Defendants did not make a racial classification on Decedent, there was still no rational basis for this decision and Defendant Hlavaty abused her discretion by unreasonably determining that Decedent's death was a suicide." ECF No. 1, PageID.7. The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

"A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005) (alteration in original) (quoting *Klimik v. Kent Cnty. Sheriff's Dep't*, 91 F. App'x 396, 400 (6th Cir. 2004)). The Court has already explained that Plaintiffs allege no facts to demonstrate that Defendants were motivated by animus or ill-will toward White. Plaintiffs thus bear the "heavy burden" of "demonstrat[ing] that the differential treatment they were subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the [defendants'] actions were irrational." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005).

In other words, Defendants' conduct must be upheld "if *any* conceivable basis rationally supports it." *Id.* at 790. Defendants have "no obligation to produce evidence to sustain the rationality of [their] action; [their] choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* (quoting *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

Construing the complaint in the light most favorable to Plaintiffs, the Court reads the claim as alleging that Defendants treated White

11

differently as compared to other decedents by changing his cause of death to suicide without a rational basis. Plaintiffs argue that Defendants "failed to consistently apply rules governing homicide investigations and impermissibly deviated from these rules in [White's] case." Plaintiffs' Supp. Brief Response, ECF No. 19, PageID.156. But Plaintiffs' conclusory allegations do not pass muster on a motion to dismiss.

Hlavaty's amended report indicates that "[f]urther investigation by police revealed that this wound was self-inflicted," and "[c]rime scene analysis" supported the conclusion that White could have pulled the trigger with his non-dominant hand. ECF No. 1-5, PageID.22. While Hlavaty's amended postmortem report could have included a more detailed factual basis for changing White's cause of death, to plead "class of one" discrimination, Plaintiffs need to plausibly allege that Defendants conduct was wholly irrational. In their supplemental briefing, Plaintiffs contend that Hlavaty improperly relied on "non-medical findings" and insist that "the Detroit police department impermissibly interfered" in the post-mortem examination. ECF No. 19, PageID.156. But these allegations are not raised in the complaint and lack any factual specificity. It is not at all clear what non-medical findings Hlavaty wrongly relied on, or how the Detroit Police Department interfered.

To the extent Plaintiffs contend that it was improper for Hlavaty to consider information such as the police investigation and crime scene analysis, this argument is meritless. In fact, these types of evidence do

not constitute inappropriate police interference or "non-medical" reasoning—they are the kind of rational basis that one would reasonably expect a coroner to consider in deciding whether to change a decedent's cause of death. Plaintiffs' allegations fail to plausibly refute this plainly reasonable justification for Defendants' conduct. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 683 (6th Cir. 2011) (holding that the plaintiffs failed to state a class-of-one claim despite arguing that the defendants' justification was "false and unsubstantiated" because such conclusory allegations "do[] not alter the facial legitimacy of the state defendants' purpose for [their conduct]"); *see also MacDonald v. City of Detroit*, 434 F. Supp. 3d 587, 598 (E.D. Mich. 2020) (dismissing the plaintiff's class-of-one claim because the "Plaintiff offer[ed] no arguments to refute [the defendants'] cited justification").

Because Plaintiffs have failed to state a constitutional violation, Hlavaty is entitled to qualified immunity; Plaintiffs' § 1983 claims against her must be dismissed. *See Essex v. Cnty. of Livingston*, 518 F. App'x 351, 356 (6th Cir. 2013) ("Because the facts as alleged by Plaintiffs do not establish a constitutional violation by [the defendant] in his individual capacity, we find that he is entitled to qualified immunity."). Furthermore, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Consequently, Plaintiffs' *Monell* claim against Wayne County is also dismissed.

13

## B. Whether Plaintiffs Have Plausibly Pled State Tort Claims

At the outset, Plaintiffs concede that their state tort claims against Defendant Wayne County may not be maintained. ECF No. 12, PageID.109. Those claims are thus dismissed with prejudice. Plaintiffs claim that Defendant Hlavaty is liable for gross negligence and negligent infliction of emotional distress based on her decision to change White's cause of death. In response, Defendants argue that Hlavaty is entitled to immunity from tort claims under the Michigan Governmental Tort Liability Act ("GTLA"), meaning Plaintiffs' tort claims against her must be dismissed as well.

### 1. Defendant Hlavaty's GTLA Immunity

The GTLA provides that "each officer and employee of a governmental agency" is entitled to immunity from tort liability if all of the following elements are satisfied:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Mich. Comp. Laws § 691.1407(2)(a)–(c). Defendants do not appear to dispute that Hlavaty was acting within the scope of her authority and was engaged in the discharge of a governmental function on behalf of

14

Wayne County when she changed White's cause of death. Rather, Defendants contend that Plaintiffs have failed to plead that Hlavaty's conduct constituted the gross negligence.

As defined by the GTLA, "'[g]ross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407 (8)(a). Under Michigan law, gross negligence is not an independent cause of action. *See Jennings v. Southwood*, 521 N.W.2d 230, 233 (Mich. 1994); *Xu v. Gay*, 668 N.W.2d 166, 169 (Mich. Ct. App. 2003). Instead, Plaintiffs must adequately plead that Defendants' conduct was grossly negligent to avoid the GTLA's immunity bar. *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 700 (6th Cir. 2018); *see also Tarlea v. Crabtree*, 687 N.W.2d 333, 339 (Mich. Ct. App. 2004) ("By statute, to be liable in tort, a governmental employee must act with gross negligence."). Therefore, "a governmental employee is entitled to governmental immunity against a claim of negligence . . . when the employee owed no duty to the plaintiff, the employee's conduct was not grossly negligent, or the employee's conduct was not the proximate cause of the plaintiff's injuries." *Dougherty v. City of Detroit*, 986 N.W.2d 467, 473–74 (Mich. Ct. App. 2021) (citations omitted).

Defendants first argue that Hlavaty did not owe any duty to Plaintiffs. Plaintiffs appear to allege that Hlavaty's "duty" arises from the Michigan statute requiring county medical examiners to investigate

15

violent deaths. Mich. Comp. Laws § 52.202. But the Michigan Supreme Court has interpreted § 52.202 to outline duties that county medical examiners "owe[] to the state." *Maiden v. Rozwood*, 597 N.W.2d 817, 829 (Mich. 1999). Plaintiffs repeatedly assert that Hlavaty was obligated to perform her statutory duties, but have not provided any factual or legal support for finding that Hlavaty owed *Plaintiffs* a duty as the parents of a decedent.

Moreover, Plaintiffs have not pled any legal or factual allegations to support that Hlavaty owed them a duty under common law or because of a special relationship. *See Hoskin v. Detroit Med. Ctr.*, No. 357265, 2022 WL 4391027, at *4 (Mich. Ct. App. Sept. 22, 2022) (affirming dismissal of negligence claims where the "[p]laintiff has not offered any evidence or argument establishing that there was a legal relationship between the parties," the parties "never directly interacted," and the plaintiff "does not allege to have a special relationship with defendant"). Therefore, Plaintiffs have failed to adequately plead that Hlavaty owed a duty to them, such that their gross negligence claim must fail.

Even assuming for the sake of argument that Hlavaty owed Plaintiffs a duty, Plaintiffs have not plausibly alleged that Hlavaty acted with recklessness demonstrating "a substantial lack of concern for whether an injury results." Plaintiffs allege that Hlavaty made a "baseless" determination in amending White's cause of death to suicide, ECF No. 12, PageID.108, and suggest that Defendants produced "false

16

documents" in investigating White's death. ECF No. 1, PageID.9. But Plaintiffs' complaint provides no factual substantiation for these conclusory allegations, and cannot support a finding that Hlavaty acted with reckless disregard. "Simply alleging that an actor could have done more is insufficient [to establish gross negligence] under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea*, 687 N.W.2d at 339. In fact, "saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness." *Id.*; *see also Dougherty*, 986 N.W.2d at 476. Plaintiffs thus cannot proceed on state tort claims against Hlavaty because she did not owe them a duty, and even if she did, Plaintiffs have not adequately pled that she acted with gross negligence.

### 2. Plaintiffs' Negligent Infliction of Emotional Distress Claim

Having concluded that Plaintiffs failed to plead gross negligence to avoid Hlavaty's immunity under the GTLA, the Court need not address Plaintiffs' negligent infliction of emotional distress ("NIED") claim. In short, Hlavaty is immune to tort liability for any potential NIED claim because she did not owe Plaintiffs a legal duty.

But even if the Court were to find that Hlavaty acted with gross negligence, Plaintiffs' NIED claim must be dismissed as a matter of law. "There is no cause of action in Michigan that allows a plaintiff to recover

17

damages simply because a defendant negligently caused emotional distress." *Hoskin*, 2022 WL 4391027, at *4. In fact, "Michigan recognizes the tort of negligent infliction of emotional distress only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result." *Teadt v. Lutheran Church Mo. Synod*, 603 N.W.2d 816, 823 n.6 (Mich. Ct. App. 1999). Plaintiffs do not allege that they witnessed any negligent injury. Plaintiffs merely rely on barebones allegations that they suffered emotional distress because of Hlavaty's negligence, without pleading other essential elements of an NIED claim. Thus, Plaintiffs' NIED claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. Plaintiffs' state tort claims against Defendants are **DISMISSED with prejudice**. Plaintiffs' § 1983 claims are **DISMISSED without prejudice**. If Plaintiffs intend to file an amended complaint, Plaintiffs must file a motion for leave to file an amended complaint by August 10, 2023.

**IT IS SO ORDERED.**

Dated: July 27, 2023      s/Terrence G. Berg
                                        TERRENCE G. BERG
                                        UNITED STATES DISTRICT JUDGE